UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ACUITY, A Mutual Insurance Company, a/s/o of JAVELINA CONSTRUCTION, INC., and of JERAMY CARBONE; | ) ) ) ) | |
| Plaintiff, | ) ) | No. 13-cv-6529 |
| v. | ) ) | Judge Marvin E. Aspen |
| ROADTEC, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

Plaintiff ACUITY, a Mutual Insurance Company ("Acuity"), as subrogee of Javelina Construction, Inc. ("Javelina"), and Jeramy Carbone ("Carbone"), filed suit in the Circuit Court of Cook County, Illinois against Defendant Roadtec, Inc. ("Roadtec"), asserting negligence, strict liability, and breach of warranty. Roadtec properly removed the case to federal court under 28 U.S.C. § 1441(a). Presently before us is Roadtec's motion to dismiss or transfer venue, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), or 28 U.S.C. §§ 1404 and 1406. As set forth below, we grant the motion to dismiss under Rule 12(b)(2).[1]

## BACKGROUND

This diversity action arose out of a workplace accident in Brownsburg, Indiana on August 15, 2011. (Compl. ¶ 11.) Carbone (a resident of Crystal Lake, Illinois) worked for Javelina (a roadway construction contractor and an Indiana corporation) on a road construction crew. (Resp. at 1.) Carbone was injured in the course of his employment while operating a

---

[1] This dismissal is without prejudice to Acuity re-filing in a forum where Roadtec is subject to personal jurisdiction.

1

milling machine,[2] and he filed a workers' compensation claim against Javelina on October 26, 2011. (Compl. ¶¶ 11–12.) Carbone and Javelina settled the workers' compensation claim, and Javelina then turned to Acuity (Javelina's Wisconsin-based insurer) to pay the settlement amount of $135,991.00 to Carbone. (Compl. ¶¶ 13–14.) Javelina purchased the milling machine that injured Carbone from Roadtec (a Tennessee corporation), and Roadtec shipped the machine from its headquarters in Chattanooga, Tennessee to Javelina in Fishers, Indiana on August 6, 2009. (Compl. ¶ 10.)

Acuity sued Roadtec on August 14, 2013, in the Circuit Court of Cook County. (Compl.) Acuity alleged various theories of liability against Roadtec, including strict liability, negligence, and breach of warranty, and sought to recover the full amount of its payments to Carbone. (*Id*. ¶ 19.) Roadtec removed the case pursuant to 28 U.S.C. § 1441(a), based on the diversity of the parties—Acuity and Roadtec are citizens of Wisconsin and Tennessee, respectively. (Mem. at 3.)

Properly in federal court, Roadtec has moved to dismiss or transfer the case under Rules 12(b)(2) and 12(b)(3), or 28 U.S.C. §§ 1404 and 1406(a). (Mem. at 3.) Roadtec first argues that we lack personal jurisdiction, and thus venue is improper, because Roadtec made no contacts with Illinois related to Acuity's lawsuit. (*Id*. at 4.) To cure those defects, Roadtec asks for dismissal, or a transfer of the case under § 1406. In the alternative—that is, if we find proper venue and personal jurisdiction—Roadtec seeks a transfer of venue under 28 U.S.C. § 1404(a) to the Southern District of Indiana or the Eastern District of Tennessee, because either of those fora would be more convenient to the parties and witnesses and serve the interest of justice. (*Id*. at 7.)

---

[2] A milling machine is a specialized piece of heavy construction equipment which strips old pavement off a road. *See http://www.roadtec.com/products/milling-machines/* (last visited Nov. 10, 2013).

2

Acuity, however, argues that we may exercise personal jurisdiction over Roadtec because Roadtec's contacts with Illinois are continuous and systematic, such that they satisfy the requirements for general personal jurisdiction. (Resp. at 3.) Namely, Acuity points to Roadtec's interactive website, its sale to and maintenance of equipment for customers in Illinois, two regional representatives whose territory includes Illinois, and Roadtec's Illinois business registration and address. (*Id.*) Additionally, Acuity argues that venue is proper in this judicial district because the federal removal statute (§ 1441) controls the venue analysis in an action removed from state court, not the federal venue statute (§ 1391). (*Id*. at 5.) Acuity contends that under § 1441 we must look to state law to determine venue for this removed case. (*Id.* at 6.) Illinois' venue statute is satisfied when a defendant does business in the county where the claim is originally filed, and Acuity maintains that Roadtec does business within the meaning of that statute, so venue is proper. (*Id*.) Finally, Acuity emphasizes that we should honor plaintiff's forum choice and deny transfer to Indiana or Tennessee under § 1404. (*Id.* at 7.)

**ANALYSIS**

As explained below, this case is properly venued in the Northern District of Illinois under 28 U.S.C. § 1441(a). Roadtec's motions to dismiss under Rule 12(b)(3) or transfer under § 1406 are therefore denied. We lack personal jurisdiction over Roadtec, however. Accordingly, rather than transfer the case under § 1404, we grant Roadtec's motion to dismiss under Rule 12(b)(2), so that Acuity may select the forum in which to proceed.

**I. Venue**

Generally, federal courts must comport with the requirements of the venue statute, 28 U.S.C. § 1391, in order to be considered an appropriate venue for a lawsuit. 28 U.S.C. § 1391(a)(1) ("[T]his section shall govern the venue of all civil actions brought in the district

3

courts of the United States."). Section 1391(b)(3) allows a civil action to be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(b)(3). Section 1441 typically governs the removal of actions from state to federal court. *See* 28 U.S.C. § 1441(a) (explaining the circumstances under which a case may be removed). Roadtec argues that § 1391 applies in this case, but Acuity claims § 1441, incorporating the Illinois venue statute, controls. We disagree with both parties.

Based on a literal reading, § 1441(a) governs the propriety of the Northern District of Illinois as the venue for this removed case, not § 1391.[3] *See Video and Sound Serv., Inc. v. Intransa, Inc.*, No. 12 C 7322, 2013 WL 1568062, at *2 (N.D. Ill. Apr. 12, 2013); *Kubin-Nicholson Corp. v. Gillon*, 525 F. Supp. 2d 1071, 1075 (E.D. Wis. 2008) (citing *Pollizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665–66, 73 S. Ct. 900, 902 (1953) for the proposition that "§ 1391 has no application [in a case removed from state court] because plaintiff did not bring the action in this court but rather in state court"). In *Pollizzi*, the Supreme Court held that § 1391 does not determine venue in a removed case, because the text of § 1391 "limits the district in which an action may be 'brought.'" *See* 28 U.S.C. § 1391(a); *Pollizi*, 345 U.S. at 665–66, 73 S. Ct. at 902. Because the action was technically "brought" in state court, § 1391 lacked operative force. *See Pollizzi*, 345 U.S. at 665, 73 S. Ct. at 902. According to the Supreme Court, the removal statute "expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'" 345 U.S. at 666, 73 S. Ct. at 902 (quoting § 1441(a)). Thus venue is proper in a

---

[3] Although we acknowledge differing approaches to the venue analysis in removal cases, we follow the lead of other judges in this district and apply § 1441(a). *See Allied Van Lines, Inc. v. Aaron Transfer and Storage, Inc.*, 200 F. Supp. 2d 941, 945 (N.D. Ill. 2002) ("Although the Seventh Circuit has not determined whether § 1391 or § 1441 applies to the venue of removed actions, courts in the Northern District of Illinois have applied § 1441 to analyze the venue of removed actions.") (Castillo, J.).

4

removed case as long as the state court where the plaintiff filed the original case lies in the judicial district where the federal district court sits.

In this case, Acuity filed its claim in the Circuit Court of Cook County, and Roadtec removed the case to federal court in Chicago. The United States District Court for the Northern District of Illinois embraces Cook County. As such, § 1441(a)'s requirements are satisfied, and venue is proper. Roadtec's motion to dismiss under Rule 12(b)(3) is denied.

## II. Personal Jurisdiction

Rule 12(b)(2) calls for dismissal where we lack personal jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). Although a plaintiff need not anticipate a personal jurisdiction challenge in its complaint, once the defendant moves to dismiss the complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Playboy Enters. Intern., Inc. v. Smartitan PTE, Ltd.*, 804 F. Supp. 2d 730, 733 (N.D. Ill. 2011) (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). When we determine a Rule 12(b)(2) motion based on the submission of written materials without holding an evidentiary hearing, the plaintiff must make a *prima facie* case of personal jurisdiction. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009); *Purdue*, 338 F.3d at 782. As such, the plaintiff bears the burden of establishing that personal jurisdiction exists. *GCUI*, 565 F.3d at 1023; *Purdue*, 338 F.3d at 782. In determining whether the plaintiff has met its burden, we resolve all factual disputes in the plaintiff's favor. *Purdue*, 338 F.3d at 782 ("[T]he plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.").

The Due Process Clause of the Fourteenth Amendment constrains a state court's exercise of personal jurisdiction because it "exposes defendants to the State's coercive power." *See*

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, — U.S. —, —, 131 S. Ct. 2846, 2850 (2011). This constitutional constraint operates with equal force on federal courts because Federal Rule of Civil Procedure 4(k)(1)(A) incorporates the personal jurisdiction standard of the state where the district court sits as the federal rule of decision. Fed. R. Civ. P. 4(k)(1)(A); *see uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010) ("[A] federal court in Illinois may exercise personal jurisdiction over [a defendant] if it would be permitted to do so under the Illinois long-arm statute."). A court's personal jurisdiction may be either specific or general. *See Goodyear*, — U.S. at —, 131 S. Ct. at 2853–54; *uBID*, 623 F.3d at 425. In either case, Illinois' long-arm statute allows a court to exercise jurisdiction on any basis permitted by the Constitution of the United States. *See* 735 ILCS 5/2–209©.[4] The key constitutional inquiry is whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Goodyear*, — U.S. at —, 131 S. Ct. at 2853 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)); *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). To determine if its exercise of adjudicatory authority comports with fair play and substantial justice, a court must analyze the nature and scope of the defendant's actions (or contacts) within, or directed at, the forum state. *uBID*, 623 F.3d at 425.

Specific personal jurisdiction allows a court to exercise jurisdiction over a defendant when the claim arises out of events related to the defendant's contacts with the forum state. *See Goodyear*, — U.S. at —, 131 S. Ct. at 2853; *uBID*, 623 F.3d at 425. Acuity admits that we lack specific jurisdiction, because the sale of the milling machine and the accident both occurred in

---

[4] The Illinois Constitution places an additional limit on a court's personal jurisdiction under the Illinois long-arm statute, *see* 735 ILCS 5/2–209©, but the Seventh Circuit has held that Illinois' Constitution is coterminous with the federal Constitution with respect to personal jurisdiction. *See Illinois v. Hemi Group LLC*, 622 F.3d 754, 757 (7th Cir. 2010).

Indiana, not Illinois. (Resp. at 3.) Instead, Acuity argues that the general theory of personal jurisdiction authorizes us to adjudicate this dispute.

Unlike specific jurisdiction, which requires the defendant's forum contacts to be related to the claim, general personal jurisdiction "allows a defendant to be sued in the forum regardless of the subject matter of the litigation." *Purdue*, 338 F.3d at 787; *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9, 104 S. Ct. 1868, 1872 nn. 8–9 (1984) (contrasting specific and general jurisdiction, and explaining that general jurisdiction exists "[w]hen a state exercises personal jurisdiction over a defendant in a suit not arising out of . . . the defendant's contacts with the forum"). In order for a court to assert general jurisdiction, a defendant's contacts must be sufficiently "continuous and systematic" so as to render it "essentially at home" in the forum state. *See Goodyear*, — U.S. at —, 131 S. Ct. at 2851; *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012). The "continuous and systematic" standard is rigorous, because "the consequences can be severe: if a defendant is subject to general jurisdiction in a state, then it may be called into court there to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum." *uBID*, 623 F.3d at 426; *see also Purdue*, 338 F.3d at 787 (explaining that contacts sufficient to confer general jurisdiction "must be so extensive to be tantamount to [the defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an Indiana court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world") (emphasis in original). Courts look to a number of factors to analyze the nature and scope of the defendant's contacts with the forum state, such as the extent to which the defendant conducts business in the forum state (often measured in sales volume, or percentage of a defendant's total sales), whether the defendant

maintains offices or employees in the forum state, whether the defendant's agents conduct business in the forum state, the extent of the defendant's advertising in the forum state, and whether the defendant has designated an agent for service of process in the forum state. *See Genocide Victims of Krajina v. L–3 Servs., Inc.*, 804 F. Supp. 2d 814, 819–20 (N.D. Ill. 2011) (citing *Helicopteros*, 466 U.S. at 416–18, 104 S. Ct. at 1868). No one factor is dispositive, however, and "each case requires an independent determination of whether, under all the circumstances, it would be fair to subject a defendant to the jurisdiction of the Illinois courts." *Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 849, 747 N.E.2d 926, 941 (1st Dist. 2001).

Recent caselaw confirm that the general jurisdiction threshold is indeed rigorous. For example, in *uBID* the defendant extensively marketed and sold domain names in Illinois. *uBID*, 623 F.3d at 424. The defendant—headquartered in Arizona—put up billboards at various Chicago-area stadiums, which combined with the defendant's national advertising and online presence resulted in "hundreds of thousands" of Illinois customers, and "many millions of dollars in revenue" to the defendant in a single year. *Id.* The Seventh Circuit held that the district court lacked general personal jurisdiction over the foreign defendant, despite "extensive and deliberate" contacts with the forum state. *Id.* at 426. Likewise, a Northern District court concluded that it could not exercise personal jurisdiction over three Massachusetts defendant universities in a sex-discrimination lawsuit by a former employee now residing in Illinois. *Snodgrass v. Berklee College of Music*, No. 12 C 10255, 2013 WL 3337815 (N.D. Ill. July 2, 2013). In *Snodgrass* the plaintiff alleged that, in addition to their public websites, the schools solicited students (essentially customers) from Illinois and maintained active Chicago alumni groups. *Id.* at *4. Additionally, one of the defendant universities had "a handful of part-time employees" in Illinois, and an admissions representative in Illinois for 30 days each year. *Id.*

*Snodgrass* contrasted the defendants' Illinois contacts with the universities' far more concentrated presence in Massachusetts (their home state), and held that the court lacked jurisdiction without "any significant ongoing contacts between Defendants and Illinois." *Id.*; *see also Toma v. Motley Crue, Inc.*, No. 11 C 6766, 2012 WL 4793508, at *3 (N.D. Ill. Oct. 9, 2012) (finding no general jurisdiction where defendant rock band sold merchandise and records to Illinois residents (the record lacked evidence on the amount of those sales) and held regular concerts in Illinois (averaging about one Illinois concert every 18 months)).

A defendant must maintain significant and ongoing contacts with a forum state to be subject to general jurisdiction. *See Abbott Labs. v. Mylan Pharm., Inc.*, No. 05 C 6561, 2006 WL 850916, at *3 (N.D. Ill. March 28, 2006). In *Abbott Labs*, the foreign defendant did not have an Illinois office or agent, but the court found general jurisdiction because the defendant "distributed substantial quantities of pharmaceuticals to wholesalers and retailers in Illinois, and gained substantial revenues from those sales." *Id.*[5] The court also considered as relevant the defendant's Illinois prescription drug distribution license, its informational website (which included interactive components), ongoing contracts between the defendant and "twenty separate entities shipping [the defendant]'s products into Illinois," and its previous consent to suit in Illinois courts. *Id.* at *5–6. *See also Genocide Victims of Krajina,* 804 F. Supp. 2d 814, 820 (N.D. Ill. 2011) (finding general jurisdiction where defense-contractor defendant headquartered in Virginia derived $19 million in yearly revenue from Illinois sources, had at least 91 Illinois employees, had an Illinois business registration, and maintained extensive contractual relationships with Illinois businesses); *Wells Fargo Bank, N.A. v. RLJ Lodging Trust*, 13 C

---

[5] The court did not specify exact figures on Illinois sales because that information was filed under seal, but the plaintiff provided numbers "about sales revenue both in absolute monetary terms and as a percentage of the overall revenues of the company and of the company's parent." *Abbott Labs.*, 2006 WL 850916, at *3.

9

00758, 2013 WL 5753805, at *6–7 (N.D. Ill. Oct. 23, 2013) (asserting general jurisdiction where foreign defendant derived $29 million in revenue from Illinois in 2011, which amounted to twelve percent of its nationwide revenue for that year, although it was not registered to do business in Illinois); *Kavo America Corp. v. J.F. Jelenko & Co.*, No. 00 C 1355, 2000 WL 715602, at *4–5 (N.D. Ill. June 2, 2000) (finding general jurisdiction based on defendant's two Illinois sales representatives, interactive website, and "sales to customers in Illinois which comprise about 10 percent of [defendant]'s overall income").

Acuity has alleged the following jurisdictionally-relevant facts: (1) Roadtec is licensed and authorized to conduct business in Illinois; (2) Roadtec maintains a registered address in Chicago; (3) Roadtec distributed, sold, inspected and repaired its equipment in Illinois; (4) Roadtec markets and sells its products to Illinois consumers through its interactive public website, which provides users with the names and contact information of two Roadtec representatives who service the state of Illinois and which allows users to subscribe to Roadtec's newsletter. (Reply at 3–6.)

Acuity's lack of specificity in its pleadings forces us to guess the nature and scope of Roadtec's Illinois contacts. On the information available, we conclude that we lack general personal jurisdiction. Acuity states that Roadtec has distributed, sold, and maintained its equipment in Illinois, but Acuity offers no relevant data by which we may gauge the level of those sales. Acuity's vague claims that Roadtec sold and serviced its equipment in Illinois do not satisfy its burden. Additionally, Acuity points to the existence of two Roadtec representatives assigned to Illinois. But Acuity again provides no useful details about them, such as whether those representatives actively solicit Illinois business, how often they visit the

forum state, or the extent of their business relationships within Illinois.[6] Acuity also focuses on Roadtec's public website. But a website alone, no matter how interactive, cannot support general jurisdiction. *See Tamburo*, 601 F.3d at 701.[7] Finally, Acuity stresses that Roadtec is registered to conduct business, and has an agent for service of process, in Illinois. Although such a registration indicates that Roadtec seeks the benefits and protections of Illinois' laws, an Illinois license or registration does not automatically confer general personal jurisdiction. *See Wilson v. Humphrey's (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990) ("Registering to do business is a necessary precursor to engaging in business activities in the forum state. However, it cannot satisfy . . . standing alone . . . the demands of due process.").

Taken together, Roadtec's contacts with Illinois fall short of the contacts found in *Abbott Labs*. We have no data with which to compare Illinois-derived revenue, but Mylan's permanence as described in *Abbott Labs*—shown by its ongoing in-state sales, numerous contractual relationships in furtherance of an extensive distribution network, and pharmaceutical license—exceeds Roadtec's passive presence, which relies primarily on an Illinois customer to reach out to Roadtec in order to transact business in the forum state. Roadtec's Illinois contacts more closely resemble those of the Massachusetts defendant universities in *Snograss*. Roadtec's representatives and website are similar in scope to the university's admissions representative and online solicitation of applicants. Merely operating a nationwide business cannot be enough to

---

[6] In addition, it appears that the two representatives cited by Acuity are *regional* representatives, also servicing at least Indiana and Michigan, not solely Illinois. *See* Roadtec Find A Rep, http://www.Roadtec.com/rep-locator (last visited Dec. 7, 2013).

[7] To the extent that Acuity relies on *Publications Intern., Ltd. v. Burke/Triolo, Inc.*, 121 F. Supp. 2d 1178 (N.D. Ill. 2000) for the proposition that maintaining an interactive website adequately supports a forum's assertion of general jurisdiction, that case has likely been abrogated by recent Seventh Circuit case law, which more accurately reflects the current state of, and ubiquitous reliance on, technology. *See Tamburo*, 601 F.3d at 701 ("[T]he maintenance of a public Internet website [is not] sufficient, without more, to establish general jurisdiction.").

consent to general jurisdiction in any state where a corporation transacts business. *See Goodyear*, ─ U.S. at ─, 131 S. Ct. at 2856 ("Under the sprawling view of general jurisdiction . . . embraced by the North Carolina Court of Appeals, any substantial manufacturer or seller of goods would be amenable to suit, on any claim for relief, wherever it products are distributed."). To hold otherwise would substitute the more lenient standard that applies to specific jurisdiction for the high bar the Supreme Court has set for general jurisdiction.

**CONCLUSION**

For the foregoing reasons, we grant the motion to dismiss, pursuant to Rule 12(b)(2), without prejudice.[8] It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated:   Chicago, Illinois
         December 16, 2013

---

[8] Acuity, of course, may re-file this action in an appropriate jurisdiction of their choosing, presumably the Southern District of Indiana or the Eastern District of Tennessee, since Roadtec has admitted that it would be subject to personal jurisdiction in either of those districts.